UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-12319-RGS

BARBARA J. BRADLEY and
MICHAEL BRADLEY

v.

DAVID J. SUGARBAKER, M.D.

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR RECUSAL UNDER 28 U.S.C. § 455(a)

December 4, 2013

STEARNS, D.J.

This medical malpractice action was transferred to this session of the court on October 26, 2012. After completion of discovery and the court's resolution of various disputed motions, among them a motion by defendant Dr. David Sugarbaker for summary judgment (which was allowed in part), the case was assigned a trial date of February 18, 2014. On November 29, 2013, plaintiffs Barbara Bradley and Michael Bradley filed a motion for recusal under 28 U.S.C. § 455(a), citing *In re Bulger*, 710 F.3d 42, 46 (1st Cir. 2013).

Plaintiffs object to the fact that I serve as a non-compensated Trustee (and have for many years) of Vincent Memorial Hospital (the Vincent) where

I also chair the Committee on Science and Research.[1] By way of explanation, the Vincent was founded in 1891 in the memory of Mary Ann Farlow Vincent, a beloved nineteenth-century Boston stage actress, to serve as a hospital for "wage-earning women and girls who, through disability, require treatment." The Vincent was staffed entirely by female physicians[2] until 1919, when its first male doctor was hired. It has the distinction of being the only hospital dedicated to the treatment of women that is privately endowed. The endowment is overseen by the Vincent Board Trustees of which I am a member.

By the 1940's, the Vincent had outgrown its second home on South Huntington Avenue (which opened in 1908), and in 1941 moved by invitation to the campus of the Massachusetts General Hospital (MGH), several of whose surgeons over the years had contributed their services to the Vincent. The

---

[1] Plaintiffs claim to have discovered this affiliation only in "the last several weeks." This assertion is dubitable as the Vincent affiliation is mentioned in virtually every judicial almanac in which my biography appears. *See, e.g.*, Lawyer's Diary Manual, The Legal Pages at 118 (Mass. ed. 2011). There is also reason to suspect that the motion is filed as a delaying or judge-shopping tactic as it is the third of its kind, following on a motion to disqualify Judge Wolf [Dkt #30] and a petition for a writ of mandamus filed with the Court of Appeals seeking Judge Wolf's removal [Dkt #34].

[2] Almost all were graduates of the Woman's Medical College of Pennsylvania, the first medical institution in the world to confer M.D. degrees on women.

completion of a permanent home for the Vincent on the grounds of MGH was, however, delayed by World War II until 1947, when the Vincent moved to the first three floors of the Burnham Building at MGH.

The Vincent has, from the time it arrived at MGH, been dedicated to original medical research made possible in part by support from its private endowment.[3] The present-day Vincent Department of Obstetrics and Gynecology is unique among comparable U.S. hospital departments in housing a state-of-the-art basic and transitional science research facility – the Vincent Center for Reproductive Biology (established in 1995 and dedicated to the study of issues affecting the female reproductive process).

Here is where plaintiffs' recusal motion enters into the Vincent's history. In 1946, the Vincent was designated as the gynecological service of MGH, although it retained its legal identity and independent staff. In 1988, the Vincent and MGH revised the Vincent's charter. As explained on the Vincent's web site, the new agreement acknowledged that

> "[t]he corporation [Vincent] is organized and shall be operated exclusively to support programs for the care and treatment of the

---

[3] The Vincent Memorial Laboratory was established in 1942 to study malignant cells in vaginal smears. One of its first successes was the development of the "Pap" smear as a standard diagnostic practice in gynecology.

diseases of women at The Massachusetts General Hospital and other organizations . . . which have as their sole member The Massachusetts General Hospital." The Vincent's independent hospital license was allowed to expire, and The MGH agreed to formally designate those places and programs associated with and funded by the Vincent Memorial Hospital Corporation with the name "Vincent." It was also at this time that the 18-member Vincent Memorial Hospital Board of Trustees expanded to include two MGH trustees.

http://www.massgeneral.org/vcrb/about/hospitalhistory.aspx (last visited Dec. 4, 2013).

Although the Vincent today retains its corporate independence, it is integrated into MGH and identifies itself (and is so seen by the public) as MGH's service for the treatment of women. MGH, in turn, is cofounder (in 1994) with Brigham and Women's Hospital (the Brigham) of the Partners HealthCare System (which now includes North Shore Medical Center, Newton-Wellesley Hospital, and Faulkner Hospital). The defendant in this case, Dr. Sugarbaker, is the Chief of Thoracic Surgery at the Brigham, and like many Boston-area medical professionals, holds a faculty appointment at Harvard Medical School for which MGH is the primary teaching hospital. Given the Vincent's (albeit three levels removed) relationship with the Brigham, plaintiffs argue that a recusal is necessary "to secure public confidence."

> Plaintiff [sic] believes that a knowledgeable member of the public would find it [my board position with Vincent] to be a reasonable

4

basis for doubting impartiality in this case. The doubts could arise not only in the outcome of the trial, involving a physician at Brigham & Women's Hospital, but also in making rulings or giving instructions involving the testimony or credibility of a number of other Partners physicians, including those currently affiliated with Brigham and Women's and MGH. And the doubts would be present even if specific rulings favored the moving party, as it could just as easily appear that the Court is "bending over backwards" to avoid any appearance of partiality.

Pls.' Mot. for Recusal, at 4-5.

DISCUSSION

Prior to the First Circuit Court of Appeal's *Bulger* decision, the law in this district with respect to judicial recusal was clear and a blend of a "reasonable person" and grounded-fact test. As this court stated in denying the original Bulger motion for recusal:

> The test for impartiality under § 455(a) for determining whether a judge's impartiality might be reasonably questioned is "[w]hether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion . . . , but rather in the mind of the reasonable man." *United States v. Voccola*, 99 F.3d 37

*United States v. Bulger*, 2012 WL 2914463, at *2 (D. Mass. July 12, 2012).

It appears to be true, as plaintiffs argue, that the First Circuit's blended test, requiring recusal where facts *would* create a reasonable doubt of

5

impartiality, has been supplanted by a more expansive standard that requires recusal where "a reasonable person *might* question [the judge's] ability to remain impartial in hearing the case."[4] *In re Bulger*, 710 F.3d at 46 (emphasis added). Under the "might," as opposed to the old "would" standard, as remote as the connection between the Board of Trustees at the Vincent and the Department of Thoracic Surgery at the Brigham might appear, I have no alternative but to accommodate plaintiffs' concern. Consequently, the motion will be allowed.

ORDER

For the foregoing reasons, the motion for recusal is <u>ALLOWED</u>. The Clerk will submit the case to be redrawn to another judge. Whether to continue the date scheduled for trial is a matter for the discretion of the judge to whom the case is redrawn.

SO ORDERED.

---

[4] The Court goes on to say that "[t]he sole claim we pass upon here is the invocation of § 455(a) on the ground that Judge Stearns's impartiality might reasonably be questioned, it being understood that a reasonable person may question impartiality without the presence of any evidence that a judge is subjectively biased. Indeed, defendant has made no claim that Judge Stearns has in fact demonstrated any bias in his handling of the case." *Id.*

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE